UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | | |
|---|---|---|
| BRANDON MERSHON, | } | |
| individually, and on behalf of all others similarly situated, | } | Case No. 8:26-cv-2071 |
| PLAINTIFF | } | **CLASS ACTION** |
| | } | COMPLAINT FOR DAMAGES |
| v. | } | 47 U.S.C. § 227, et seq. |
| | } | |
| | } | |
| LAKELAND REGIONAL MEDICAL CENTER, INC., | } | |
| DEFENDANT | } | **JURY TRIAL REQUESTED** |

_____/

## CLASS ACTION COMPLAINT FOR DAMAGES AND REQUEST FOR JURY TRIAL

1.  Plaintiff BRANDON MERSHON, individually and on behalf of all others similarly situated, through his attorney, brings this action to challenge the actions of Defendant LAKELAND REGIONAL MEDICAL CENTER, INC. for unlawful conduct in connection with debt collection activity.

2.  The Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq. ("TCPA"), was designed to prevent calls like the ones described within this complaint, and to protect the privacy of citizens like Plaintiff. "Voluminous consumer complaints about abuses of telephone technology – for example, computerized calls dispatched to private homes prompted Congress to pass the TCPA." *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012).

3. In enacting the TCPA, Congress intended to give consumers a choice as to how creditors and telemarketers may call them, and made specific findings that "[t]echnologies that might allow consumers to avoid receiving such calls are not universally available, are costly, are unlikely to be enforced, or place

an inordinate burden on the consumer." TCPA, Pub.L. No. 102-243, § 11. Toward this end, Congress found that:

> [b]anning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy invasion.

*Id.* at § 12; *see also Martin v. Leading Edge Recovery Solutions, LLC*, 2012 WL 3292838, at *4 (N.D. Ill. Aug. 10, 2012) (citing Congressional findings on TCPA's purpose).

4. Congress also specifically found that "the evidence presented to the Congress indicates that automated or prerecorded calls are a nuisance and an invasion of privacy, regardless of the type of call...." *Id.* at §§ 12-13. *See also*, *Mims*, 132 S. Ct. at 744.

5. Plaintiff makes the allegations below on information and belief, with the exception of those allegations that pertain to Plaintiff's personal knowledge.

## JURISDICTION AND VENUE

6. This action arises out of Defendant's violations of the Telephone Consumer Protection Act (TCPA), over which the U.S. District Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 47 U.S.C. § 227, et seq.

7. Because Defendant conducts business in the State of Florida and in this District by repeatedly contacting Florida residents and residents of this District while attempting to collect upon consumer debts, personal jurisdiction is established.

8. Personal jurisdiction and venue are proper in the Middle District of Florida, Tampa Division, because Plaintiff resides in the City of Mulberry, County of Polk; because the conduct complained of herein occurred within the Middle District of Florida, Tampa Division; because Defendant conducted business in the Middle District of Florida, Tampa Division at all times relevant; and because witnesses are located within the Middle District of Florida, Tampa Division. Specifically, Defendant harassed

Plaintiff and invaded Plaintiff's privacy by repeatedly calling Plaintiff in the tortious manners complained of herein while Plaintiff was physically located in the Middle District of Florida, Tampa Division.

## PARTIES AND DEFINITIONS

9.  Plaintiff is a natural person.

10.  Plaintiff is, and at all times mentioned herein was, a citizen and resident of the State of Florida, and therefore is and was a "person" as such term is described by the TCPA, 47 U.S.C. § 153(39).

11. Defendant is, and at all times mentioned herein was, a corporation and therefore is and was a "person" as such term is described by the TCPA, 47 U.S.C. § 153(39).

## FACTUAL ALLEGATIONS

12. At some point in the past, Plaintiff received medical services from Defendant. Plaintiff has both Medicaid and Medicare.  Additionally, prior to receiving these medical services, Plaintiff paid Defendant, in cash, to cover what his insurances would not.  Then, on November 28, 2022, Defendant called Plaintiff to collect on an alleged debt surrounding the medical services Plaintiff received, and in so doing, Defendant left Plaintiff a voicemail containing artificial and prerecorded voices.

13. On November 28, 2022, after receiving the voicemail described in paragraph 12, above, Plaintiff called Defendant and spoke with a representative.  In that phone call, Plaintiff told Defendant not to call his cell phone anymore and to send him a bill for the alleged debt.  Plaintiff provided his mailing address to Defendant for that purpose.  Defendant has yet to send Plaintiff anything in the mail surrounding Plaintiff's alleged debt at issue.

14. Notwithstanding Plaintiff's instruction to Defendant not to call Plaintiff's cell phone anymore, Defendant continued to call Plaintiff's cell phone.

15. Between November 28, 2022 and January 17, 2023, Defendant called Plaintiff's cell phone multiple times; each time in the same manner, leaving a voicemail containing artificial and prerecorded

voices – these voicemails are exactly identical, containing the exact same recording and message each time.

16. On January 17, 2023, Plaintiff again called Defendant and spoke with a representative.  In that phone call, Plaintiff again told Defendant to stop calling him and again informed Defendant that he had insurance and did not owe this alleged debt in the first place.

17. Between January 17, 2023 and February 23, 2023, Defendant called Plaintiff's cell phone multiple times; each time in the same manner, leaving a voicemail containing artificial and prerecorded voices – these voicemails are exactly identical, containing the exact same recording and message each time.

18. On February 23, 2023, Plaintiff's attorney sent Defendant a letter via certified mail informing Defendant that, among other things, Plaintiff was represented by an attorney with respect to such debt, Plaintiff previously revoked consent to receive collection phone calls in the manner described herein, and that Plaintiff believed such phone calls to be in violation of the TCPA.  Defendant signed for the certified mail on February 28, 2023.

19. Between February 23, 2023 and March 2, 2023, Defendant called Plaintiff's cell phone multiple times; each time in the same manner, leaving a voicemail containing artificial and prerecorded voices – these voicemails are exactly identical, containing the exact same recording and message each time.  This includes a call on March 1, 2023 – after Defendant signed for the certified mail giving Defendant actual knowledge that Plaintiff was represented by an attorney with respect to such debt, Plaintiff previously revoked consent to receive collection phone calls in the manner described herein, and that Plaintiff believed such phone calls to be in violation of the TCPA.

20. On March 2, 2023, Plaintiff's attorney and Defendant's attorney began discussions surrounding Plaintiff's attorney's letter.  Defendant's attorney produced an alleged contract entered into by Plaintiff and Defendant which gives Defendant the authorization to contact Plaintiff using methods

otherwise prohibited by the TCPA. Crucially, the alleged contract also contains the provision that "the above authorizations are subject to revocation." Such language would be surplusage if it were not intended to enable a consumer to unilaterally revoke consent – that is to say, every contractual provision in every contract is subject to revocation via future mutual consent between the parties anyway, so there would not be any need to include such language if that was the drafter's intent. Unfortunately, after months of back-and-forth, the parties could not come to an agreement as to the impact of such a provision.

21. Notwithstanding the above, Defendant resumed calling Plaintiff cell phone, having both actual knowledge that Plaintiff was represented by an attorney with respect to such alleged debt, and actual knowledge that Plaintiff revoked his consent to receive calls in manners prohibited by the TCPA.

22. In total, between November 28, 2022 and July 20, 2026, Defendant called Plaintiff at least 40 times; each time in the same manner, leaving a voicemail containing artificial and prerecorded voices – these voicemails are exactly identical, containing the exact same recording and message each time.

## CLASS ALLEGATIONS

23. Plaintiff brings this action on behalf of himself and all others similarly situated, as a member of the proposed class ("The Class"), defined as follows:

> "All persons within the United States who received any telephone call or
> calls from Defendant to said person's cellular telephone made through the
> use of an artificial or prerecorded voice within the four years prior to the
> filing of this Complaint, and for whom Defendant did not have consent to
> make such call or calls to said person at the time or times Defendant made
> such call or calls to said persons."

24. Plaintiff is a member of The Class, as he received telephone calls from Defendant to his personal cellular telephone containing artificial and prerecorded voices, and for which Defendant did not have consent to make such calls at the times Defendant made such calls to Plaintiff.

25. Defendant, including Defendant's employees, agents, and owners, are excluded from The Class.

26. The Class is so numerous that the individual joinder of all its members is impractical. While Plaintiff does not know the exact number or identities of members of The Class, Plaintiff believes such information can be obtained through discovery, including the discovery of Defendant's own records. Additionally, Plaintiff estimates the number of members of The Class to be in the thousands, considering Defendant's attorney believes that consumers cannot revoke previously-given contractual consent notwithstanding a provision in the same contract stating that it is "subject to revocation" and that Defendant can ignore consumers revoking their consent to receive such calls.

27. Common questions of law and fact exist as to all members of The Class which predominate over any questions affecting only individual members of The Class. These questions, which do not vary between members of The Class and which may be determined without reference to any individual circumstances of any Class members, include, but are not limited to, the following:

"Whether Defendant placed a call or calls to any member of The Class' cellular telephone involving the use of an artificial or prerecorded voice within the four years prior to the filing of this Complaint, and for whom Defendant did not have consent to make such call or calls to said person at the time or times Defendant made such call or calls to said persons; and whether any members of The Class were damaged thereby, and if so, to what extent."

28. As a person who received numerous calls from Defendant using artificial and prerecorded voices, and for whom Defendant did not have his consent to make such calls to him at the times Defendant made such calls to him, Plaintiff is asserting claims that are typical of The Class.

29. Plaintiff will fairly and adequately protect the interests of the members of The Class. Plaintiff has retained counsel with over twelve years of experience in litigation protecting consumers from debt collectors and original creditors who violate the law in the collection of alleged debts, including obtaining many successful results for clients with TCPA claims.

30. The prosecution of separate actions by individual members of The Class would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of the other members of The Class not parties to such adjudications or that would significantly impair the ability of such members of The Class not parties to such adjudications to properly protect their interests.

31. A class action is superior to other methods of adjudication of this controversy, as individual litigation of claims of members of The Class is impracticable.  It would be unduly burdensome both to the Court and to the parties, both in financial terms and in terms of time spent on such individual litigation.  A class action protects the time and money of all parties involved, including the Court.

32.  Questions of law and fact common to members of The Class predominate over any such questions affecting only individual members of The Class, and the claims made by Plaintiff are capable of being proven at trial via evidence common to The Class rather than individual to its members.

## FIRST CLAIM FOR RELIEF

### Violations of the TCPA, 47 U.S.C. § 227, et seq. – class action

33. Plaintiff repeats, re-alleges, and incorporates by reference paragraphs 1-32, as if fully set forth herein.

34. By placing a call or calls to any member of The Class' cellular telephone involving the use of an artificial or prerecorded voice within the four years prior to the filing of this Complaint, and for

whom Defendant did not have consent to make such call or calls to said member of The Class at the time or times Defendant made such call or calls to said member of The Class, Defendant has engaged in illegal practices under the TCPA, 47 U.S.C. 227(b).

35. Upon information and belief, for Defendant's TCPA violations described in paragraph 34, above, at least some were knowing or willful because Defendant had actual knowledge that at least some members of The Class either revoked previously-given consent pursuant to a relevant provision in a contract between those members and Defendant, or never gave Defendant consent in the first place.

36. The TCPA provides for statutory damages of $500.00 per call made in violation of the statute, 47 U.S.C. § 227(b)(3).

37. The TCPA provides for treble damages, an additional $1,000.00 per call made in violation of the statute, for a total of $1,500.00 per call, if the violations were willful or knowing, Id.

38. Plaintiff and The Class are entitled to $500.00 in statutory damages per violating call, Id.

39. Plaintiff and The Class are entitled to an additional $1,000.00 in treble statutory damages per violating call, for a total of $1,500.00 per violating call, if the violation was knowing or willful, Id.

WHEREFORE, Plaintiff, on behalf of himself and The Class, respectfully requests that this Court enters judgment against Defendant and provides Plaintiff and The Class with the following relief:

(a) That this action be certified as a Class Action, establishing The Class and any appropriate subclasses as the court deems proper and may provide;

(b) Appointing Plaintiff as representative of The Class;

(c) Appointing Murado Law, P.A., the law firm representing Plaintiff, as Class Counsel;

(d) Statutory damages in the amount of $500.00 per each violating call;

(e) Treble statutory damages in the amount of an additional $1,000.00 per each violating call;

(f) For a total of $1,500.00 per each violating call;

(g) Costs;

(h) An award of reasonable attorney's fees and costs to Plaintiff and The Class, pursuant to the common fund doctrine (see Camden I Condo Association v. Dunkle, 946 F.2d 768 (11th Cir.1991));

(i) prejudgment and postjudgment interest;

(j) And any other relief as the court deems proper and may provide.

Plaintiff requests a jury for all claims so triable.

Respectfully submitted this 20th day of July, 2026,

By Plaintiff's attorney: /s/ Nicholas Michael Murado
Nicholas Michael Murado
Florida Bar # 102769
Murado Law, P.A.
2010 S.W. 99th Avenue
Miramar, Florida, 33025
Telephone: 754-816-2196
E-mail: muradolaw@gmail.com